CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA ·
FILED

DEC 0 7 2011

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 3:11CR00026 |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| CARLA BENSON, | ) | |
| | ) | |
| | ) | By:  B. WAUGH CRIGLER |
| Defendant. | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury returned a two-count Indictment charging defendant in Count One with knowingly and intentionally distributing or attempting to distribute five grams or more of methamphetamine, a Schedule II narcotic controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1); 841(b)(1)(B) and 846. Count Two charged defendant with knowingly and intentionally using or attempting to use a communication facility, namely the U.S. Mail, in facilitating the commission of an act or acts constituting a felony under Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 846, that is, the offense set forth in Count One of the indictment, in violation of Title 21, United States Code, Section 843(b) and 846.

On December 5, 2011, a plea hearing was conducted before the undersigned. The defendant was placed under oath and testified her full legal name is Carla Benson, she was born on August 28, 1955, and she graduated from high school. The defendant stated that she can read, write, and understand the English language. The defendant stated that she was fully aware of the nature of the charges against her and the consequences of pleading guilty to those charges. The defendant testified that she was not under the influence of alcohol, medicine, or any drug. The

defendant stated that, while she had undergone prior brain surgery, she had no other physical or mental condition which impaired her ability to understand what the court was saying or the nature of the proceedings. The defendant testified that she had received a copy of the Indictment pending against her, and that she had fully discussed the charges therein and any defenses thereto, and her case in general, with her counsel. The defendant stated that she was pleading guilty of her own free will because she was, in fact, guilty of the offenses charged. The defendant testified that she understood that Counts One and Two are felonies, and if her plea is accepted, she will be adjudged guilty of those offenses.

The defendant acknowledged that the maximum statutory penalty for Count One is a $5,000,000 fine and/or imprisonment for a term of forty years, together with a term of supervised release. There is a mandatory minimum sentence of imprisonment for a term of five years.
The defendant acknowledged that the maximum statutory penalty for Count Two is a $250,000 fine and/or imprisonment for a term of four years, together with a term of supervised release.
The defendant was informed that parole has been abolished, and that if she is sentenced to prison, she will not be released on parole, but on supervised release, a violation of which could result in additional incarceration. Finally, the defendant testified that she understood that, upon conviction, she will be required to pay a special assessment of $100 per felony count.

The defendant was informed that under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that the Sentencing Guidelines are no longer mandatory, but the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that she and her counsel had discussed how the Sentencing Guidelines might apply in her case. The defendant also testified that she understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report has been prepared and both parties have

2

been given an opportunity to challenge the reported facts and application of the Guidelines. The defendant stated that she understood that the eventual sentence imposed may be different from any estimate her attorney had given her, or any recommendation by the government, and that the court has the authority to impose a sentence that is either higher or lower than that called for by the Guidelines, so long as the sentence is not greater than the statutory maximum for the offenses to which the defendant is pleading guilty.

The defendant acknowledged it was agreed that the 2010 edition of the United States Sentencing Guidelines Manual was applicable to her offenses. The defendant further acknowledged that, in the Plea Agreement, it had been stipulated that Sentencing Guideline 2D1.1 is applicable to her conduct. The defendant was informed that the government will not object to her being given the benefit of sentencing under the "safety valve" provisions of Guideline Section 5C1.2 and Title 18, United States Code, Section 3553, if she meets the criteria for such benefit at the time of her sentencing. The defendant also stated that she understood that even if she fully cooperates with law enforcement, the government is under no obligation to file a motion to reduce her sentence for her substantial assistance, and if the government makes the motion, it is up to the court to determine how much of a departure, if any, should be made. The defendant stated that she understood that, contingent upon her acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of her duties under the Plea Agreement, the government would recommend a two-level (2) reduction under USSG § 3E1.1(a), and, if applicable, the government would move that she be given an additional one-level (1) reduction under USSG § 3E1.1(b). The defendant stated that she was aware that the government would recommend a sentence at the low end of the applicable guideline range. The defendant also acknowledged her consent to the abandonment, official use or destruction of anything seized by law enforcement during the investigation of her case. The defendant agreed that she had knowingly and voluntarily waived her rights to request or receive any records

3

pertaining to the investigation or prosecution of her case, including any records that may be sought under the Freedom of Information Act or the Privacy Act of 1974. The defendant stated she understood that she had made an agreement to pay restitution for the entire scope of her criminal conduct. The defendant agreed she would submit a financial statement, if called upon to do so. She further agreed that from the time of her signing of the plea agreement or the date she signs the financial statement, whichever is earlier, she would not convey anything of value without authorization from the government. The defendant agreed she understood that at the discretion of the court, she may be denied any or all Federal benefits. The defendant acknowledged her monetary obligations under the plea agreement, which calls for such to be due immediately and subject to immediate enforcement.

The defendant acknowledged that she was waiving her right to have a jury determine beyond a reasonable doubt the facts alleged in the Indictment, including any facts related to sentencing. The defendant testified that she understood that she had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if her guilty plea is accepted:

1. The right to plead not guilty to any offense charged against her;
2. The right at trial to be presumed innocent and to force the government to prove her guilt beyond a reasonable doubt;
3. The right of assistance of counsel at trial and in any subsequent appeal;
4. The right to see, hear and cross-examine witnesses;
5. The right to call witnesses to testify on her own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses;
6. The right to decline to testify unless she voluntarily elects to do so in her own defense;
7. The right to a unanimous guilty verdict; and
8. The right to appeal a guilty verdict.

The defendant testified that she understood that, under the terms of the agreement she was waiving her rights to appeal, but that she was not waiving her right to appeal or have her

4

attorney file a notice of appeal as to any issue which cannot by law be waived. The defendant stated she was aware that the government had retained its rights to appeal. The defendant acknowledged that she had agreed to waive her right to collaterally attack any order issued in the case, unless such attack is based on ineffective assistance of counsel.

The defendant also testified that she understood that she may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm. The defendant stated that she was satisfied with the advice and representation given to her in this case by her counsel, and that she believed the representation had been effective. The defendant asked the court to accept her plea of guilty to Counts One and Two.

**THE GOVERNMENT'S EVIDENCE**

The evidence presented in the government's Factual Summary is as follows: On or about June 6, 2011, a package containing methamphetamine that was mailed from a fictitious person ("Masters") at a fictitious address in Arizona to Louisa, Virginia, was intercepted before it was delivered to the address in Louisa. A narcotics canine alerted to the presence of narcotics in the package. The United States Postal Inspection Service obtained a search warrant on June 7, 2011, to open and search the package. Nearly an ounce of what appeared to be substantially pure methamphetamine was found inside that package. Postal Inspectors conducted a controlled delivery of this package on or about June 8, 2011, to the Louisa address, and then conducted a search at that location, pursuant to an anticipatory search warrant, and recovered the package.[1]

In or about March 2011, the U.S. Postal Inspection Service had previously intercepted a package similarly labeled from Arizona and destined for the same Louisa address, which

---

[1] Prior to the controlled delivery, the majority of the substance in the package had been removed by the investigators.

5

contained a small amount of methamphetamine and some pipes. A search warrant was obtained after a canine alerted on that package as well. Located in that package was also a mailing envelope from one of the Louisa residents to Carla Benson in Tempe, Arizona.

Postal Inspector Thomas Kingry located Carla Benson, the defendant, in Tempe Arizona and conducted a consensual interview. During the interview, the defendant admitted that she had been mailing from the Tempe, Arizona, Post Office, two packages of methamphetamine per month to the above-referenced Louisa residence for more than one year. She stated that each package contained a little less than an ounce of methamphetamine; that she paid approximately $1,000 for the methamphetamine she sent each time; and that she charged the recipient $1,250 for each shipment. She sais she did not recall sending the package with the pipes and small amount of methamphetamine and usually mailed pipes separately.

Inspector Kingry had obtained from the Louisa Post Office copies of several of the Express Mail labels that appeared to be labeled similarly to the labels on the intercepted packages. During his interview of the defendant, the defendant identified her handwriting and indicates that the labels had been used on the packages of methamphetamine that she had mailed. Postal records also demonstrated numerous mailings between one of the residents at the above-referenced Louisa address and the defendant over a period of a couple of years.

The substance found in the intercepted June 2011 package described above was analyzed by the United States Postal Service laboratory and identified as containing "$d$-methamphetamine hydrochloride" with a total net weight of approximately 24.86 grams that was 97% pure. The substance found in the intercepted March 2011 package referenced above was also analyzed by the

6

United States Postal Service laboratory and identified as containing "*d*-methamphetamine hydrochloride" with a total net weight of approximately 0.716 gram that was also 97% pure.

The U.S. Mail is a communication facility within the meaning of 21 U.S.C. § 843(b).

## FINDINGS OF FACT

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

(1) The defendant is fully competent and capable of entering into a plea agreement and making an informed plea;

(2) The defendant is aware of the nature of the charges and the consequences of her plea;

(3) The defendant knowingly and voluntarily entered a plea of guilty to Counts One and Two of the Indictment; and

(4) The evidence presents an independent basis in fact containing each of the essential elements of the offenses to which the defendant is pleading guilty.

## RECOMMENDED DISPOSITION

Based upon the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty to Counts One and Two of the Indictment.

The undersigned DIRECTS that a presentence report be prepared. A sentencing hearing hereby is scheduled for February 29, 2012 at 10:30 a.m. before the presiding District Judge in Charlottesville.

## NOTICE TO PARTIES

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by

rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
United States Magistrate Judge

12 7 11
Date

8